THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

TANG KHEOK HWA ROSEMARY d/b/a          :
R M MARTIN SUPPLIES AND SERVICES,      :
                                       :
                          Plaintiff,   :         07 Civ. 7498 (CM)
                                       :
          - against -                  :         ECF CASE
                                       :
JALDHI OVERSEAS PTE LTD.,              :
                                       :
                          Defendant.   :
------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANT'S MOTION FOR COUNTERSECURITY

*Attorneys for Plaintiff*
TANG KHEOK HWA ROSEMARY d/b/a
R M MARTIN SUPPLIES AND SERVICES,

Patrick F. Lennon
Nancy R. Peterson
LENNON, MURPHY & LENNON, LLC
The Gray Bar Building
420 Lexington Ave, Suite 300
New York, NY 10170
(212) 490-6050
(212) 490-6070 (fax)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................iii, iv

PRELIMINARY STATEMENT....................................................................1

FACTS.........................................................................................3

ARGUMENT....................................................................................6

POINT I
COUNTERSECURITY IS NOT WARRANTED BECAUSE
DEFENDANT'S COUNTERCLAIMS DO NOT ARISE OUT
OF THE SAME TRANSACTION OR OCCURRENECE AS THE CLAIMS
OF PLAINTIFF AND THUS ARE NOT COMPULSORY
COUNTERCLAIMS.............................................................................6

POINT II
THE LANGUAGE OF RULE E(7) IS NOT MANDATORY................................8

A. The legal standard ........................................................................8

B. Defendant has failed to allege prima facie valid counterclaims, and in so much as
   they have been alleged, they are entirely frivolous......................................10

POINT III
COUNTERSECURITY IS NOT WARRANTED BECAUSE
DEFENDANT'S CLAIMS ARE FRIVOLOUS AND DESIGNED TO
LEVERAGE PLAINTIFF INTO SURRENDERING ITS SECURITY......................14

POINT IV
COUNTERSECURITY IS NOT WARRANTED BECAUSE
PLAINTIFF IS FINANCIALLY UNABLE TO POST SECURITY........................19

POINT V
AT MOST, DEFENDANT IS ONLY ENTITLED TO EQUIVALENT SECURITY....20

CONCLUSION..................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Afram Lines Int'l, Inc. v. M/V CAPETAN YIANNIS*, 905 F.2d 347, 349 (11th Cir. 1990)..................................................................................................................................9,19

*Boland Marine & Manufacturing Co. M/V BRIGHT FIELD*, No CIV. A 97-3097, 1999WL 172940 (E.D. La. Mar 26, 1999)........................................................19

*Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A.*, 06-Civ.-15299 (PKL), (2007 U.S. Dist. LEXIS 18827, (SD.N.Y. 2007)............................................20,21

*Expert Diesel, Inc. v. Yacht FISHIN FOOL*, 627 F. Supp. 432 (S.D. Fla. 1986)...........16

*Finecom Shipping Ltd. v. Multi Trade Enterprises AG*, 05 Civ. 6695 (GEL), 2005 U.S. Dist. LEXIS 25761, at *6 (S.D.N.Y. Oct. 24, 2005)........................................21

*Incas & Monterey Printing & Packaging, Ltd. v. M/V SANG JIN*, 747 F.2d 958, 964-65 (5th Cir. 1984), cert. denied sub nom *Van Weelde Brother Shipping Ltd. v. I.N.C.A.S.*, 47 U.S. 1117 (1985)..............................................................................................6

*Result Shipping Co. v. Ferruzzi Trading USA*, 56 F.3d 394 (2d Cir. 1995)...............2, 9

*Sea Transp. Contrs., Ltd. v. Indus. Chemiques Du Sengal*, 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006)..........................................................................................17,18

*Seaplus Line Co. v. Bulkhandling Handymax AS*, 409 F. Supp. 2d 316, 324 (S.D.N.Y. 2005) overruled on other ground by *Aqua Stoli Shipping Ltd. v. Gardner Smith Party Ltd.*, 460 F. 3d 434, 445 (2d Cir. 2006)......................................................................6

*Sea Terminal, Inc. v. Independent Container Lines*, 89 Civ. 6931 (MBM), 1900 U.S. Dist LEXIS 11561, *5 (S.D.N.Y. Sept 4, 1990).................................................6

*Solomon v. Bruchhausen*, 305 F.2d 941 (2d Cir. 1962), cert. denied sub nom *Isbrandtsen v. Maximo*, 371 U.S. 951 (1963).................................................................6

*Titan Navigation Inc., v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987)............9,14,19

*Trinidad Foundry & Fabricating, Ltd. v. M/V KAS CAMILLA*, 776 F. Supp. 1555 (S.D. Fla. 1991).................................................................................................9,15,16

*U.S. Maritime Services Inc. v. Trade Ventures Inc.*, No. CIV A. 98-0499, 1998 WL 388669 (E.D. La. July 8, 1998)................................................................16

*Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 23
U.S. 629, 632-36 (1924))...................................................................................9

*Ythan Ltd. v. Americas Bulk Transport Ltd.*, 336 F. Supp. 2d 305 (S.D.N.Y. 2004)......15

## Statutes and Rules

Fed. R. Civ. P. Supp. Adm. R. B...............................................................................20

Fed. R. Civ. P. Supp. Adm. R. E(7)(a)......................................................................8

## Other Authorities

7A James W. Moore Et Al., Moore's Federal Practice ¶E.15, at E-756 (2d ed. 1995)).....9

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
TANG KHEOK HWA ROSEMARY d/b/a          :
R M MARTIN SUPPLIES AND SERVICES,      :
                                       :
                    Plaintiff,         :        07 Civ. 7498 (CM)
                                       :
    - against -                        :        ECF CASE
                                       :
JALDHI OVERSEAS PTE LTD.,              :
                                       :
                    Defendant.         :
----------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
### TO DEFENDANT'S MOTION FOR COUNTERSECURITY

Plaintiff, Tang Kheok Rosemary d/b/a R M Martin Supplies and Services (hereinafter

"Rosemary" or "Plaintiff"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, files

the within Memorandum of Law in Opposition to Defendant's Motion for Countersecurity. For

the reasons set forth herein, the motion of Defendant, Jaldhi Overseas Pte. Ltd. ("Jaldhi" or

"Defendant") should be denied.

### PRELIMINARY STATEMENT

In the context of a Rule E(7) application, a grant of countersecurity is far from automatic.

Rule (E)(7) limits a countersecurity application to counterclaims arising from the same

transaction or occurrence that is the subject of the original action. Furthermore, outside of the

requirements of Rule E(7), as confirmed by the Second Circuit Court of Appeals, the Court has

considerable discretion to in deciding whether to order countersecurity. In exercising this

discretion the Court should be guided by two principles: (1) placing the parties on equal footing;

and (2) preventing the imposition of such burdensome costs on a plaintiff that it might prevent it

1

from bringing suit. *See Result Shipping Co. v. Ferruzzi Trading USA*, 56 F.3d 394 (2d Cir. 1995).

In addition, the Court has the discretion to deny a countersecurity application for cause shown, including where the counterclaim is frivolous, speculative, and/or clearly lacking in merit, or where the plaintiff is financially unable to post countersecurity.

As will be more fully addressed herein, Defendant's motion for countersecurity should be denied because: (1) Defendant's counter-claim, or a large part thereof, does not arise out of the same transaction or occurrence as the claims of Plaintiff; (2) Defendant has failed to allege a prima facie valid maritime claim(s); (3) Defendant's claims for countersecurity are frivolous; (4) equity favors the Plaintiff against the plain backdrop of the Defendant's contrived effort to obtain leverage; and, (5) Plaintiff is financially unable to post security.

Defendant is trying to "game" the system with its motion for countersecurity. Defendant would have this Court award it over three million dollars in countersecurity on highly speculative and frivolous claims whose sole purpose is to vex or harass Plaintiff. By raising large (yet legally and factually unsound) counterclaims, Defendant can, in effect, nullify Plaintiff's attachment.

Defendant is aware that Plaintiff is a small company and is unable to post countersecurity. Thus, Defendant has raised large, and legally unfounded, counterclaims in the hopes the Court will fail to notice that they are totally lacking merit and in all ways frivolous. In this way, Defendant can successfully vacate the attachment, (if/when Plaintiff cannot post countersecurity) *and* it can avoid ever having to litigate the underlying action. In other words, once Defendant's property is released, Plaintiff submits that Defendant will have no motivation to participate in the underlying litigation. Even if judgment were rendered, Plaintiff would have

2

no security to enforce against.  No doubt after its property is released, Defendant will take much greater efforts to avoid having its property move through New York banking system in the future.

Defendant's counterclaims are defined by their frivolous nature, *i.e.* they are vague, speculative and totally lacking in merit.  Defendant would have the Court believe that its estimates are reasonable; however, Defendant offers no explanation of how it calculated the amounts claimed.  For example, Defendant makes a bald assertion about lost profits, but provides no basis for how this claim was calculated.  Thus, there is no discernable analysis upon which the Court can determine whether Defendant's estimates are reasonable or not.  For this reason alone, Defendant's counterclaims should be denied.

As Defendant has failed to meet the requirements of Rule E(7) and/or good cause for denying the motion has been shown, Defendant's motion for countersecurity should be denied.

## FACTS

The background facts are set forth in full in the accompanying Declarations of Tang Kheok Hwa Rosemary ("Rosemary Declaration") and Plaintiff's foreign counsel, Kimarie Cheang Xiao Pin ("Kimarie Declaration").  However, a short summary of the facts germane to this application is provided below.  In June of 2004, the parties entered into an agreement by which Plaintiff agreed to assist the Defendant in fixing, *i.e.* chartering-in vessels.  In addition, Plaintiff agreed to manage and/or operate those vessels fixed for the Defendant, including, but not limited to, coordinating the movements of those vessels.

As well as providing that Plaintiff would fix vessels for Defendant, the agreement contemplated that Plaintiff would supervise and perform operational duties on those vessels,

3

such as coordinating the loading and discharge of ships and the inspection of cargoes for import and export.

In return, Defendant agreed to pay Plaintiff a management fee calculated as follows:

- (a) for vessels which are time chartered by Defendant on a trip basis, the management fee would be 2.5% of the daily charter hire payable for each vessel limited to a maximum of 25 days; and

- (b) for vessels which are time chartered by Defendant on a period basis, the management fee would be 2.0% of the daily charter hire payable for each vessel.

During the course of the agreement, disputes arose between the parties regarding Defendant's failure to pay Plaintiff the commissions in relation to several vessels. *See list of vessels annexed to the Verified Complaint as Exhibit "1."*

On or about June 26, 2007, the agreement between Plaintiff and Defendant was terminated. As a result of Defendant's failure to pay the commissions due and owing to the Plaintiff, Plaintiff sustained damages in the principal amount of $672,653.30, exclusive of interest, litigation costs, and attorneys' fees.

After a part payment, there remained a principal sum of $624,334.73 due to Plaintiff from Defendant. On August 24, 2007, in order to obtain jurisdiction over the Defendant and to obtain security for its claims, Plaintiff commenced this action and applied for and obtained an Ex Parte Order of Maritime Attachment Garnishment against the Defendant's property within this District. Plaintiff's application was granted and an Ex-Parte Order and accompanying Writ of Attachment were issued in the amount of $884,165.85.

4

On August 29, 2007, Defendant made a further part payment in the sum of $72,589.05 to Plaintiff in an attempt to discharge their outstanding liability. The Ex-Parte Order and the Writ of Attachment were adjusted accordingly.

Plaintiff applied to reduce the amount of Defendant's funds that were subject to the attachment to take into account Defendant's partial payment in an amount equal to $72,589.05 as well as the funds received by Plaintiff in an amount equal to $101,157.80, which were used to set-off against the sums due and owing from Defendant. Plaintiff served the adjusted Supplemental Ex Parte Order(s) on garnishee banks within this District that were believed to be holding Defendant's funds, including, *inter alia*, J.P. Morgan Chase. Approximately $682,636.88 of Defendant's funds remains attached at J.P. Morgan Chase pursuant to the Ex-Parte Order(s) of Attachment issued in this matter.

On September 25, 2007, Defendant made the instant application for countersecurity. Defendant has requested security for three counterclaims in this action. All three counterclaims are frivolous, general, speculative, and/or clearly lacking merit.

Defendant's first claim is for lost of profits relating to the charter of the M/V POS FREEDOM and the M/V MEDI SHANGHAI in the amount of $773,549.74. Defendant claims that these vessels were chartered without its consent and it would have been able to charter other vessels at a greater profit had the Plaintiff not fixed them on its behalf.

Second, Defendant requests security for unpaid hire and/or freight in relation to the charter of the M/V GOLDEN HOPE and the M/V MARJATTA P and various other unnamed vessels in the amount of $551,736.68.

Third, Defendant claims that Plaintiff breached its fiduciary duty under the agreement between the parties and thus it is entitled to the return of any compensation paid to the Plaintiff

5

during the term of Plaintiff's alleged breach of the management agreement and disloyalty

beginning as of January 1, 2007, which amount is calculated to be $1,610,179.00.

As will be shown herein, Defendant's counterclaims have no basis in law and/or fact and

Defendant's motion for countersecurity should denied.

## ARGUMENT

### POINT I

### COUNTERSECURITY IS NOT WARRANTED BECAUSE DEFENDANT'S COUNTERCLAIMS DO NOT ARISE OUT OF THE SAME TRANSACTION OR OCCURRENECE AS THE CLAIMS OF PLAINTIFF AND THUS ARE NOT COMPULSORY COUNTERCLAIMS

Supplemental Rule E(7) is identical to Rule 13(a) of the Federal Rules of Civil Procedure

in that it only permits counter-security for counter-claims that are compulsory. *Sea Terminal,*

*Inc. v. Independent Container Lines,* 89 Civ. 6931 (MBM), 1900 U.S. Dist LEXIS 11561, \*5

(S.D.N.Y. Sept 4, 1990). Accordingly, when determining whether a counterclaim arises "out of

the same transaction or occurrence" under Rule E(7), courts will apply the test for compulsory

counterclaims under Rule 13(a). *See Incas & Monterey Printing & Packaging, Ltd. v. M/V*

*SANG JIN,* 747 F.2d 958, 964-65 (5th Cir. 1984), cert. denied sub nom *Van Weelde Brother*

*Shipping Ltd. v. I.N.C.A.S.,* 47 U.S. 1117 (1985); *Solomon v. Bruchhausen,* 305 F.2d 941 (2d Cir.

1962), cert. denied sub nom *Isbrandtsen v. Maximo,* 371 U.S. 951 (1963); *Seaplus Line Co. v.*

*Bulkhandling Handymax AS,* 409 F. Supp. 2d 316, 324 (S.D.N.Y. 2005) (stating that

"counterclaims falling within the purview of Supplemental E(7) are akin to compulsory

counterclaims under Rule 13(a)"), overruled on other grounds by *Aqua Stoli Shipping Ltd. v.*

*Gardner Smith Party Ltd.,* 460 F. 3d 434, 445 (2d Cir. 2006).

Defendant's counterclaims do not arise from the "same transaction or occurrence" as Plaintiff's claims. Therefore, Defendant's counterclaims are not mandatory counterclaims for which it is entitled to counter-security under Supplemental Rule E(7).

Plaintiff's claim for failure to pay commissions relates only to the various vessels listed in Exhibit "1" of the Verified Complaint dated August 24, 2007. Particularly, Defendant failed to pay the commissions/fees due to Plaintiff for charters fixed with each of the following vessels: the M/V JIN LI, the M/V ETERNAL POWER, the M/V AMIRA, the M/V RELIANCE OCEAN, the M/V IKAN KERAPU, the M/V GOLDEN WISH, the M/V GOLDEN HOPE, the M/V BAYTUR, the M/V ATHOS, the M/V FAIR SKY, the M/V IRIS HALO, the M/V MARITIME LIJIANG, the M/V SOPHIA, the M/V HARMONIC PROGRESS, the M/V OCEAN SYMPHONY, the M/V KATERINA, the M/V FURNESS LONDON, the M/V CK GLORY, the M/V HARDWAR, the M/V IKAM SUJI, the M/V OCEAN PRELUDE, the M/V HERON, the M/V YASA AYSEN, the M/V IKAN SEMBAK, the M/V MICHELE BOTTIGLIERI, the M/V ALAM MANIS, the M/V SUNNY GLORY, and the M/V FIRST TRADER.

Defendant's counterclaims relate to the vessels M/V MEDI SHANGHAI, M/V POS FREEDOM, M/V GOLDEN HOPE and M/V MARJATTA P. None of these vessels relating to the Defendant's counterclaims feature in the Plaintiff's claims except the M/V GOLDEN HOPE. And, as will be more fully addressed in Point II, the claim referencing the GOLDEN HOPE should be disregarded. In any event, Defendant's counterclaim in relation to the M/V "GOLDEN HOPE" has not been broken down, and thus it is unclear what funds, if any are alleged to be owed from this charter.

7

As Defendant's claims relate to different transactions/occurrences than those claimed by Plaintiff in the Verified Complaint, they do not qualify for countersecurity under Rule E(7). As stated above, at the very most, Defendant's claim with regards to the charter of the GOLDEN HOPE could be found to relate to the same transaction or occurrence. However, this claim should be dismissed as it is vague and without basis.

Defendant alleges in support of this claim that Plaintiff failed to remit hire in relation to "other vessels," e.g. the GOLDEN HOPE and MARJATTA P. *See Defendant's Answer with Affirmative Defenses and Counterclaim,* ¶ 43. However, this claim is not broken down. Thus, it is unclear what amounts are alleged to be due from the charter of the GOLDEN HOPE, if any. As Defendant's claim is entirely vague, it should not be considered a sound basis for countersecurity because it is not "reasonably calculated."

As Defendant's claims do not arise out the same transaction or occurrence as those alleged in Plaintiff's complaint, the Court should deny Defendant's request for countersecurity.

## POINT II

### THE LANGUAGE OF RULE E(7) IS NOT MANDATORY

#### A. The legal standard

Rule E(7)(a) provides in relevant part:

> When a person has given security for damages in the original action asserts a counter-claim that arises from the same transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counter-claim unless the court for cause shown, directs otherwise.

Fed. R. Civ. P. Supp. Adm. R. E.(7)(a).

While the initial language of this rule makes it appear that the posting of countersecurity

is mandatory whenever its conditions are satisfied, "the final clause of the quoted language makes clear that the trial court possesses broad discretion in deciding whether to order counter-security under such conditions." *Result Shipping Co. v. Ferruzzi Trading USA Inc.* 56 F.3d 394, 399 (2d Cir. 1995)(citing *Afram Lines Int'l, Inc. v. M/V CAPETAN YIANNIS*, 905 F.2d 347, 349 (11th Cir. 1990); *Titan Navigation Inc., v. Timsco, Inc.*, 808 F.2d 400, 403 (5th Cir. 1987); 7A James W. Moore Et Al., Moore's Federal Practice ¶E.15, at E-756 (2d ed. 1995)).

While the purpose of Rule E(4)(7) is to permit a counterclaimant to likewise receive security in appropriate instances, countersecurity under Rule E(7) is not appropriate where a defendant asserts a frivolous counterclaim. *See e.g., Result Shipping*, 56 F.3d at 400; *see also Titan Navigation*, 808 F. 2d at 404; *Trinidad Foundry & Fabricating, Ltd. v. M/V KAS CAMILLA*, 776 F. Supp. 1555, 1558 (S.D. Fla. 1991). The posting of countersecurity likewise is not appropriate where the plaintiff is financially unable to post countersecurity. *Result Shipping*, 56 F.3d at 400 (citing *Titan Navigation*, 808 F.2d at 403-405; also citing *Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 23 U.S. 629, 632-36 (1924)). In each case, the court is to use its discretion to determine, based on the totality of circumstances, whether the posing of countersecurity should be ordered. *Result Shipping*, 56 F. 3d at 400 (quoting *Titan Navigation*, 808 F.2d at 404; citing *Afram Lines*, 905 F.2d at 349-50).

As shown by the supporting declarations and documents and as discussed below, Defendant's countersecurity application should be denied because Defendant's "counterclaims" are a manufactured artifice designed to place Plaintiff in the very position warned against in numerous decisions. Where a plaintiff must choose between maintaining its security against the defendant at an untenable cost or having to surrender a right to what it otherwise would be entitled, courts have routinely refused to grant a defendant's countersecurity request.

Here, in light of the baseless nature of Defendant's claims, the leverage that Defendant seeks to gain over Plaintiff in its effort to vacate Plaintiff's attachment, and the minimal financial capabilities of Plaintiff, it is respectfully submitted that the totality of the circumstances weighs heavily in Plaintiff's favor and Defendant's motion for counter-security therefore should be denied.

### B. Defendant has failed to allege prima facie valid counterclaims, and in so much as they have been alleged, they are entirely frivolous

As stated above, Defendant has requested security for three counter-claims in this action. All three counter-claims are frivolous, general, speculative, and/or clearly lacking merit.

Defendant has requested security for the following claims: (1) lost profits from the alleged "wrongful" chartering of the Vessels M/V POS FREEDOM and M/V MEDI SHANGHAI without Defendant's consent (based on other profits that Jaldhi made operating similar vessels); (2) failure to remit hire in the amount of $551,736.68 in relation to the other Vessels, *i.e.* the M/V GOLDEN HOPE and the MARJATTA P and possible other vessels following complete review of the accounting records and; (3) the return of any compensation paid to Plaintiff during the term of Plaintiff's alleged breach of management and disloyalty in the approximate amount of $1,610,179.00.

Defendant's counterclaims have no basis in law and/or fact.

First, Defendant's claim for lost profits is baseless. The lost profits claim is contingent on the fact that Plaintiff could only charter vessels "consistent with Jaldhi's consent and advice." *Kimarie Declaration* at ¶ 12. However, there was never any specific agreement between the parties that Plaintiff was only permitted to manage vessels "consistent with Jaldhi's consent and advice." *Kimarie Declaration* at ¶ 13. Rather, pursuant to the agreement between the parties, Plaintiff agreed to fix charters and manage vessels as Defendant's ship manager. The

arrangement between the parties clearly allowed Plaintiff to fix charter parties on behalf of Defendant first and thereafter provide Defendant with the details. *Kimarie Declaration* at ⁋ 15. This was done on previous occasions for specific vessels and Defendant has always accepted this method of fixing charter parties by Plaintiff without complaint or objection. *Kimarie Declaration* at ⁋ 16. Furthermore, Defendant verbally gave Plaintiff general authority to issue and sign charter parties and to issue Letters of Indemnity on the Defendant's behalf during the course of the agreement. *Kimarie Declaration* at ⁋ 17. Defendant's allegation that Plaintiff was to "obtain the express authorization of the Defendant before disclosing any information and/or documents related to the agreement between the parties to third parties" is also false.

There was neither such a requirement nor was it agreed between the parties for Plaintiff to obtain any express authorization from Defendant before it could disclose any information and/or documents relating to the agreement. *Kimarie Declaration* at ⁋ 19. In any event, Defendant has not specified what information and/or documents have been allegedly disclosed without authorization. Thus, Plaintiff can only form a limited response to this vague allegation, which under the circumstances cannot support Defendant's demand for countersecurity.

Despite Defendant's allegations to the contrary, Defendant had always given Plaintiff the express authority to conduct all commercial transactions, including the issuance of Letters of Indemnity and the like on behalf Defendant's behalf. *Kimarie Declaration* at ⁋ 21.

Thus, as Plaintiff fixed the M/V POS FREEDOM and the M/V MEDI SHANGHAI in accordance with the agreement with Defendant, which did not guarantee profits on every such transaction, its lost profits claim for hypothetical higher earning charters is moot. Moreover, Plaintiff has already accounted to Defendant for any alleged losses incurred from the charters of M/V POS FREEDOM and the M/V MEDI SHANGHAI. In its vague assertion of damages,

11

Defendant does not seem to have accounted for the amounts paid by Plaintiff for these losses in its calculation of damages. *Kimarie Declaration* at ¶ 23.

In addition, even assuming *arguendo* that Plaintiff was required to obtain Defendant's consent, Defendant has not submitted any evidence showing that there were other charters of a similar nature being fixed for higher profits at the relevant times. Defendant merely alleges that it had other charters which resulted in higher profits. This allegation does not serve as adequate evidence of lost profits under Singaporean or United States law.

Defendant's second counterclaim that Plaintiff failed to pay/remit hire due and owing to Defendant is also totally without merit. Defendant wrongfully implies that Plaintiff had a duty to pay hire to Defendant under the charter parties which it fixed on Defendant's behalf. As Defendant is well aware, Plaintiff was not named in the charters for the M/V GOLDEN HOPE and the M/V MARJATTA P. *Kimarie Declaration* at ¶ 29.

Plaintiff was not the charterer and had no obligation to pay freight and/or hire under those charters or the agreement with Defendant. *Kimarie Declaration* at ¶ 30. Defendant has not and cannot allege that Plaintiff had a duty to pay freight or hire for the charters it fixed for the Defendant. At most, Plaintiff had a duty to remit any freight which the charterers may have sent to its account with Defendant's express knowledge. *Kimarie Declaration*, at ¶ 32.

All freight sent to Plaintiff from the charterers has either been: (i) remitted to the Defendant in accordance with Defendant's instructions; or (ii) used to settle amounts due and owing to Plaintiff. The Plaintiff no longer holds any freight and Defendant has not submitted any evidence to show otherwise. *Kimarie Declaration* at ¶ 33.

12

As Plaintiff has no duty to pay freight under the charters it fixed for and on Defendant's behalf and no longer holds any freight earned on such charters, Defendant's claim in this regard fails as a matter of fact and law and must be disregarded.

With regard to Defendant's final claim, Plaintiff denies that it owed any fiduciary duty to Defendant under the agreement and/or otherwise. Even assuming *arguendo* there was a fiduciary duty to Defendant, Plaintiff did not breach it. *Kimarie Declaration* at ¶ 36. Plaintiff never agreed and was not required to act exclusively for the Defendant. Plaintiff is in the ship management business and is free to manage other ships for other clients. *Kimarie Declaration* at ¶ 38.

From what can be gathered from the Defendant's vague Answer and counterclaim, Defendant's claim for breach of the management contract and disloyalty arise from what it construes as the wrongful fixing the vessels M/V MEDI CHENNAI and M/V KORIANA. In so much as Plaintiff can determine the nature of Defendant's disloyalty claim, it is totally without merit. More specifically, the alleged wrongful fixing of the vessel M/V MEDI CHENNAI and M/V KORIANA were done with the express authority of the Defendant. *Kimarie Declaration* at ⸀ 39. Even if Defendant contests this, Defendant's full knowledge and consent was obtained after the fixing of the vessel and Defendant never objected in any event. *Kimarie Declaration* at ¶ 40.

Moreover, Defendant is not entitled to recover the return of any compensation paid to Plaintiff during the alleged term of Plaintiff's breach of the management contract and disloyalty. Defendant has failed to show that there has been any breach of the management contract or that there has been any disloyalty.

13

Defendant's claim requesting the return of all commissions likewise fails as a matter of law. Under Singaporean law, even if a breach of fiduciary duty is proven, the party in breach would not thereby have lost their right to commission or salary or remuneration earned unless they had acted dishonestly or in bad faith, which is not alleged here by Defendant. *Kimarie Declaration* at ¶ 44. As Defendant has not and cannot allege bad faith or dishonesty on part of the Plaintiff, it has not alleged a prima facie valid counterclaim. Defendant is not entitled to security for meritless counterclaims.

Finally, Defendant has failed to submit any support for its claims outside of an attorney's declaration. It is completely unclear how all of the claim amounts were calculated or in most cases, what vessels they relate to. The one thing that is clear is that Defendant has failed to allege enough to show that its estimates of damages are reasonable, and thus entitled are to countersecurity. Accordingly, Defendant's motion for countersecurity should be denied.

## POINT III

### COUNTERSECURITY IS NOT WARRANTED BECAUSE DEFENDANT'S CLAIMS ARE FRIVOLOUS AND DESIGNED TO LEVERAGE PLAINTIFF INTO SURRENDERING ITS SECURITY

Rule E(7)(a) should not be permitted to be employed like a bludgeon to eliminate to eliminate the possibility of security for well-founded claims through the granting of countersecurity on a defendant's dubious counterclaims:

> [T]he court should not require counter-security where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant.

*Titan Navigation,* 808 F.2d at 404.

Accordingly, courts in a variety of circumstances have refused to order the posting of countersecurity where a counterclaim is frivolous, lacking in merit, or too speculative to be

14

entitled to the normal presumption that countersecurity is appropriate. Several representative examples, discussed below, demonstrate how courts have addressed this issue.

In *Ythan Ltd. v. Americas Bulk Transport Ltd.,* 336 F. Supp. 2d 305 (S.D.N.Y. 2004), the defendant sought \$4.4 million in countersecurity on a cargo indemnity claim. *Id. at 39.* In denying that portion of the defendant's countersecurity request, the court ruled that the "highly contingent" nature of the defendant's claim made posting of such countersecurity inappropriate.

In *Trinidad Foundry & Fabricating, Ltd. v. M/V KAS CAMILLA,* 776 F. Supp. 1555 (S.D. Fla. 1991), the plaintiff arrested the defendant's vessel in connection with its claims for repairs and necessaries. *Id.* at 1556. The defendant shipowner counterclaimed for damage to the vessel due to the plaintiff's negligence, breach of warranty and breach of contract and moved for countersecurity under Rule E(7). *Id.* at 1558. In its application, the defendant contended that the plain language of Rule E(7) require the plaintiff to post counter-security. *Id.* The court disagreed and, after examining the facts surrounding defendant's purported "counterclaim" refused to order the posting of countersecurity:

> [Defendant] argues that the plain language of Rule E(7) requires Plaintiff to post a bond or other security on the Counterclaims filed in this action. The Court is not persuaded by Defendant's reasoning in this regard. Rule E(7) mandates the posting of countersecurity in this instant unless the Court, for cause shown, directs otherwise. In the present case, Defendant's authorized representative executed Plaintiff's Notice of Repairs Satisfactorily Completed, confirming that the repairs performed by Plaintiff to the Vessel has been satisfactorily completed. **The Undersigned believes that this fact alone indicates that Defendants' Counterclaims may be frivolous and constitutes sufficient cause shown to remove the presumption of countersecurity dictated by Rule E(7).** The Court would like to note parenthetically that this preliminary determination of the nature of Defendant's Counterclaims is germane only to the instant determination of the posting of countersecurity. It in no way speaks to the merits of Defendant's counterclaims and has no res judicata or collateral estoppel effect.

*Id. (emphasis added).*

15

In *Expert Diesel, Inc. v. Yacht FISHIN FOOL*, 627 F. Supp. 432 (S.D. Fla. 1986), the court refused to grant the defendants' request for countersecurity on counterclaims similar to those asserted by the defendant in *KAS CAMILLA*. *See id.* In so holding, it stated "the court is reluctant to compel Plaintiff to post a bond in light of Defendant's damage claims of a general rather than a precisely detailed nature." *Id.* at 433.

In *U.S. Maritime Services Inc. v. Trade Ventures Inc.*, No. CIV A. 98-0499, 1998 WL 388669 (E.D. La. July 8, 1998), the defendants counterclaimed for damages arising over a lost charter party. *Id. at *2.* In denying the defendant's motion for countersecurity, the court ruled that the counterclaim was too speculative and insufficiently supported to justify an order directing the posting of counter-security.

> The defendant's claim for the alleged lost charter is too speculative to sustain an order for countersecurity. Unlike plaintiff's claim which is based on past events reasonably able to be ascertained and quantified, defendant's losses due to a 'road not taken' cannot be so readily ascertained and quantified. **The Baldwin affidavit is insufficient by itself to determine what the defendants estimated actual loss is after expenses and other items are deducted, even assuming the voyage would have occurred but for the plaintiff's alleged broken agreement.**

*Id. (emphasis added).*

Here, Defendant has offered even less substance than the defendants in the cases cited above. Defendant summarily asserts via attorney affidavit that it has claims for over 3 million dollars, but it has not produced any contracts, any witness statements, or any other proof that such a claim has any basis in reality. As the cases cited above make clear, general claims or unsupported allegations are not given a presumption of validity that a well-supported and documented claim is to receive.

Plaintiff's claims are based on Defendant's documented failure to pay commissions/fees on certain vessels it fixed for Defendant. Plaintiff's claim is based on events that have already

16

occurred and consideration already rendered. They are not speculative. Rather, Defendant was to pay a certain amount for each Vessel fixed and Defendant failed to pay such amounts.

In contrast, Defendant's claims are highly speculative, like those of the defendant in *U.S. Maritime Services*. Defendant is seeking damages for lost profits for charters which it may or may not have made in the future, for unpaid hire which it has failed to allege to any degree of specificity and a highly speculative "disloyalty" claim.

Just like the defendants in *U.S. Maritime Services*, Defendant's "claim for the lost charter is too speculative to sustain an order for counter-security. . . .[D]efendants' losses due to a 'road not taken' cannot be so readily ascertained and quantified." In *U.S. Maritime Services*, the defendants' countersecurity application was denied even though the defendants submitted affidavit supporting their counterclaim. Here, Defendant has only submitted an attorney affidavit in support of its claim. Accordingly, even assuming that Defendant's application for countersecurity if facially proper, Defendant's claim is insufficiently unsupported and too speculative to warrant an order directing the posting of countersecurity.

Defendant's claim for disloyalty, requesting reimbursement of all compensation paid, is also highly speculative. As established by Plaintiff's foreign counsel, such a remedy is not available under Singaporean law unless Defendant can prove that Plaintiff acted in bad faith or dishonestly. Defendant has not alleged bad faith or dishonesty, let alone submitted any documentation or affidavits to substantiate such allegations. The probability that this claim would actually be granted under these circumstances is so speculative as to render it frivolous.

It is inappropriate to grant security for highly speculative damages, even when under a certain set of facts such damages could be theoretically awarded in the underlying action. *See Sea Transp. Contrs., Ltd. v. Indus. Chemiques Du Sengal*, 411 F. Supp. 2d 386, 396 (S.D.N.Y.

2006)(reducing the security sought because even though contract at issue could theoretically run interminably, notwithstanding the merits of the claim under English law, the request for damages was too speculative and did not conform to the contract). In *Sea Transp. Contractors., supra,* the plaintiff sought security for a contract, which if not breached, could have been renewed interminably. As the contract could theoretically have been renewed forever, plaintiff requested security for loss of profit damages for 30 years. While this was theoretically possible, the court found it highly improbable and not in conformance with the contract. As the damages claimed were speculative and remote, the Court considerably reduced the claimant's request for security considerably.

Here, Defendant's claim requesting a return of all commissions is similarly speculative. In order to be awarded a return of commissions, Defendant would have to prove dishonesty or bad faith, which has not even been alleged. It is apparent that a "return of all commissions" is an extreme remedy reserved for extreme factual circumstances involving bad faith and dishonesty, not present here. For this reason alone, the Court can and should exercise its discretion to deny Defendant's motion for countersecurity on the "return of commissions" claim.

However, there is another reason to deny Defendant's request in this regard. Particularly, if Defendant's position were endorsed, every time a breach of contract was alleged by a claimant, the respondent would raise a counterclaim requesting back ALL monies paid under that contract under some highly concocted theory of liability. The initial claim made would be rendered a nullity by the far fetched and unsupported counterclaim asserted. Defendants should not be awarded countersecurity for whatever fabulous and outlandish counterclaims they can concoct. While it may be theoretically possible all compensation could be ordered returned, it is

18

so highly improbable that it cannot form a sound basis for countersecurity. Requesting security for such speculative claim is inherently unreasonable.

For the reasons stated herein, the Court should decline to grant security for Defendant's speculative and hypothetical counterclaims.

## POINT IV

### COUNTERSECURITY IS NOT WARRANTED BECAUSE PLAINTIFF IS FINANCIALLY UNABLE TO POST SECURITY

Generally, "when a party is financially unable to post countersecurity, courts often dispense with the requirement of [Rule E(7)(a)]." *Titan Navigation*, 808 F. 2d at 403 (citing cases); *accord Result Shipping*, 5 F. 3d at 400. Rule E(7) "is not intended to impose burdensome cost on a plaintiff that might prevent it from bringing suit"); *Afram Lines*, 905 F.2d at 350.

For example, in *Boland Marine & Manufacturing Co. M/V BRIGHT FIELD*, No CIV. A 97-3097, 1999WL 172940 (E.D. La. Mar 26, 1999), the district court held that the defendant satisfied the elements of Rule E(7). *Id. at *1*. Nevertheless, in reviewing the position of the parties, the court refused to grant the motion for countersecurity despite prerequisites met where the "request amount would leave plaintiffs at a distinct disadvantage by tying up a large portion of its resources." *Id.*

The accompanying Declaration of Tang Kheok Hwa Rosemary ("Rosemary Declaration) and the financial statements attached thereto show that Plaintiff is a small entity without resources sufficient to post counter-security, especially of the magnitude sought by Defendant. As stated in the Rosemary Declaration, Plaintiff's bank account only holds SGD 58,130.64 and USD 76,890.75. *Rosemary Declaration* at ¶ 16.

19

Under the well-settled precedent discussed in this section and the previous section, the

Rule E(7) inquiry is to be driven by principles of equity and fairness. Here not only is the

Plaintiff financially unable to post countersecurity, but it appears Defendant is exploiting that

fact by raising a large, unfounded counterclaim, in hopes that Plaintiff will be stripped of its

security obtained pursuant Supplemental Admiralty Rule B. The result is precisely the type that

the drafters of Rule E(7) contemplated in leaving in the "for cause" exception to the automatic

provision of countersecurity, and thus leaving it within the Court's discretion to deny

countersecurity where the equities favor such denial. *See, e.g. Washington-Southern Nav. Co. v.*

*Baltimore & Philadelphia Steamboat Co.* 263 U.S. 629, 631-39 (1924)(discussing predecessor to

Rule E(7) under old Admiralty Rules and holding that an automatic granting of countersecurity

without consideration of the circumstances was not the intention of the rule).

For the foregoing reasons, Defendant's request for countersecurity should be denied.

## POINT V

## AT MOST, DEFENDANT IS ONLY ENTITLED TO EQUIVALENT SECURITY

It is a well-settled principle that where a court finds countersecurity to be appropriate it

should be limited to the amount that claimant has attached. In other words, a defendant's

countersecurity should be equivalent to the plaintiff's.

In *Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A.,* 06-Civ.-15299

(PKL), (2007 U.S. Dist. LEXIS 18827, *4-5 (SD.N.Y. 2007), Judge Leisure confirmed this

principle and ordered a plaintiff to post countersecurity in such a manner. He held as follows:

> [Plaintiff] Clipper does not dispute that Rule E(7) entitles [defendant] Global to
> be secured for the full value of its counterclaim while Clipper is secured only for
> roughly nine percent of its claim. This position is consistent with the approach
> Judge Lynch recently took in a similar situation. In that case, as here, the value of
> the counterclaim that defendant sought to secure exceeded the amount that the
> plaintiff had managed to attach as security for its original claim. *Judge Lynch*

20

*ordered the plaintiff to provide security in the same amount that it has succeeded in attaching and that it provide additional security matching any additional property it should subsequently succeed in attaching.* Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 05 Civ. 6695 (GEL), 2005 AMC 2952, 2005 U.S. Dist. LEXIS 25761, at *6, 2005 WL 2838611, at *2 (S.D.N.Y. Oct. 24, 2005).

\*\*\*

Clipper is ordered to post a bond or other satisfactory security in the sum of $154,647.73…and to provide additional security matching any additional property Clipper has restrained or is able to restrain in the future in any jurisdiction in connection with the underlying arbitration, up to a maximum of $2,077,173.90

*Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A.*, 06-Civ.-15299 (PKL)(S.D.N.Y.

Feb. 26, 2007) at 6 (citations omitted). Consistent with the holdings in *Clipper Shipping Lines*

and *Finecom Shipping*, if this Court deems that Defendant motion for countersecurity should be

granted, it should order Plaintiff to post countersecurity in an amount equal to or less than the

amount of security in respect of Plaintiff's claim.

Defendant's arguments ignore the precedent on this matter, flying in the face of the well-

established principle to the contrary, and should be disregarded.

## CONCLUSION

As Defendant's counterclaims do not meet the requirements of Rule E(7) and are

otherwise frivolous, general, speculative, and/or clearly lacking merit, and because Plaintiff is

incapable of posting the requested counter-security, this Court should deny Defendant's motion

for countersecurity.

Dated: October 19, 2007
New York, NY

Respectfully submitted,
The Plaintiff,
TANG KHEOK HWA ROSEMARY d/b/a
R M MARTIN SUPPLIES AND SERVICES

By: _____
Patrick F. Lennon (PL 2162)
Nancy R. Peterson (2871)
LENNON, MURPHY & LENNON, LLC
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - fax

## **AFFIRMATION OF SERVICE**

I hereby certify that on October 19, 2007, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____
Nancy R. Peterson