UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TANG KHEOK HWA ROSEMARY d/b/a
R M MARTIN SUPPLIES AND SERVICES,

                     Plaintiff,                  07 Civ. 7498 (CM)

- against -                                ECF CASE

JALDHI OVERSEAS PTE LTD.,

                     Defendant.
-----------------------------------------------------------------X

**DECLARATION OF TANG KHEOK HWA ROSEMARY PURSUANT TO
28 U.S.C. §1746 IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR COUNTERSECURITY**

I, TANG KHEOK HWA ROSEMARY, hereby affirm as follows:

1. I am the sole proprietor of RM Martin Supplies and Services ("Plaintiff" or "Rosemary").

2. I submit this Declaration based on facts and information known to me personally, as well as documents and information available to me, all of which I believe to be true and accurate.

3. I make this Declaration in support of my business firm's opposition to a motion filed by Jaldhi Overseas Pte. Ltd. ("Defendant" or "Jaldhi") for countersecurity in the above captioned proceeding.

**THE AGREEMENT**

4. In June of 2004, the parties entered into an agreement by which Plaintiff agreed to assist the Defendant in fixing, *i.e.* chartering-in, vessels. In addition, Plaintiff agreed to manage and/or operate those vessels fixed for the Defendant, including but not limited to coordinating the movements of those vessels.

5. As well as providing that Plaintiff would fix vessels with Defendant, the agreement contemplated that Plaintiff would supervise and perform operational duties on those vessels, such as coordinating the loading and discharge of ships and the inspection of cargoes for import and export.

6. In return, Defendant agreed to pay Plaintiff a management fee calculated as follows:

> (a) for vessels which are time chartered by the Defendant on a trip basis, the management fee would be 2.5% of the daily charter hire payable for each vessel limited to a maximum of 25 days; and
>
> (b) for vessels which are time chartered by the Defendant on a period basis, the management fee would be 2.0% of the daily charter hire payable for each vessel.

7. During the course of the agreement, disputes arose between the parties regarding Defendant's failure to pay Plaintiff the amounts due and owing under the agreement in relation to several vessels. *Please see list of vessels annexed to the Verified Complaint as Exhibit "1."*

8. On or about June 26, 2007, the agreement between Plaintiff and Defendant was terminated.

9. As a result of Defendant's failure to pay the sums due and owing to the Plaintiff under the agreement, Plaintiff sustained damages in the principal amount of $672,653.30, exclusive of interest, litigation costs and attorneys fees.

10. On or about July 4, 2007, Defendant made a part payment in the amount of $48,318.57 towards Plaintiff's claims.

11. Despite the part payment, there remained a principal sum of $624,334.73 due to Plaintiff from Defendant.

12. On August 24, 2007, in order to obtain jurisdiction over the Defendant and to obtain security for its claims, Plaintiff commenced this action and applied for and obtained an Ex Parte Order of Maritime Attachment Garnishment against the Defendant's property within this District.

13. On August 29, 2007, Defendant made a further part payment in the sum of $72,589.05 to Plaintiff in an attempt to discharge their outstanding liability.

14. On September 12, 2007, Plaintiff applied to reduce the amount of the Defendant's funds that was subject to the attachment to take into account the Defendant's part payment of the sum of $72,589.05 and further funds in the sum of $101,157.80 received by the Plaintiff which were used to set-off against the sums due and owing from Defendant. I have been informed that approximately $682,636.88 of Defendant's funds remains attached at J.P. Morgan Chase pursuant to the Ex-Parte Order(s) of Attachment issued in this matter.

## PLAINTIFF'S FINANCIAL CAPABILITIES

15. I understand that Defendant has requested an order from the Court that my business firm post security on Defendant's counterclaim in at least the amount of approximately $3,687,207.80. As the information provided below will demonstrate, it would be impossible for my business firm to comply with that order.

16. Plaintiff is a small business firm operating as a sole proprietorship. It is not publicly traded. It has only one office and has only 6 employees as the business firm's personnel. It has a current bank account balance of SGD 58,130.64 and USD

76,890.75. *Please find attached hereto as Exhibit "1" a Statement of Income Tax Computation and a Statement of Income and Expenditure for the year of 2006 of the Plaintiff.*

17. The Plaintiff's allowable expenses for the year 2006 equals SGD 1,187,841.00 which is approximately USD 813,923.859.

18. The Plaintiff's turnover for the year 2006 is SGD 1,913,748.00.

19. The Plaintiff's adjusted profit (after capital allowance) for the year 2006 is SGD 725,907.00 which equals approximately $497,400.94.

20. As the Statement of Income and Expenditure illustrates, the Plaintiff has virtually no liquid assets by which we could post the security demanded by Defendant's counterclaim. If the choice were given to my business firm whether to post countersecurity or surrender our security against Defendant, I would have to agree to surrendering our security against Defendant. This is not because I wish to surrender that security, it is because posting security on Defendant's claim is financially impossible for my business firm.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of October, 2007.

TANG KHEOK HWA ROSEMARY