CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Defendant,
JALDHI OVERSEAS PTE. LTD.
366 Main Street
Port Washington, New York 110050
Telephone:    516-767-3600
Telefax:       516-767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TANG KHEOK HWA ROSEMARY d/b/a           :
R M MARTIN SUPPLIES AND SERVICES,       :
                                        :
                Plaintiff,              :        07 CV 7498 (CM)
                                        :
     - against -                        :
                                        :
                                        :
JALDHI OVERSEAS PTE. LTD.,              :
                                        :
                Defendants.             :
                                        :
-----------------------------------------------------------x

**ATTORNEY'S AFFIDAVIT
IN SUPPORT OF MOTION FOR COUNTER-SECURITY
PURSUANT TO SUPPLEMENTAL RULE E(7)**

State of New York     :
                      :ss.
County of Nassau      :

Owen F. Duffy, being duly sworn, states under penalty of perjury as follows:

1. I am a member of the Bar of the State of New York, and I am admitted to practice before this Court.

2. I am a member of the firm of Chalos, O'Connor & Duffy, LLP, attorneys for the Defendant JALDHI OVERSEAS PTE. LTD., (hereinafter "Jaldhi"), in this action.

3. I am fully familiar with the matters set forth in this affidavit, and my knowledge of the matters set forth in this affidavit is based on information provided to me by Defendant Jaldhi, its agents and attorneys and my own independent research.

4. I submit this affidavit for the purpose of setting forth the facts and introducing evidence of the facts to support Jaldhi's Motion for Counter-Security Pursuant to Supplemental Rule E(7).

5. Attached herewith as Exhibit A is a true copy of a pleading filed in the High Court of The Republic of Singapore on October 8, 2007 on behalf of Defendant Jaldhi Overseas PTE. LTD. in suit number 580 of 2007/N.

Exhibit A is a true copy of Defendant Jaldhi's DEFENCE & COUNTECLAIM, which sets forth the nature and details of Jaldhi's counterclaim against the Plaintiff, TANG KHEOK HWA ROSEMARY, which is referred to in this Court as Plaintiff RM Martin.

Dated: Port Washington, New York
       October 26, 2007

*[signature]*
Owen F. Duffy

Subscribed and sworn to before me this
October 26, 2007

*[signature]*

Notary Public, State of New York

GEORGE E. MURRAY
Notary Public, State of New York
No. 02MU6108120
Qualified in New York County
Commission Expires April 12, 2008

**EXHIBIT A**

IN THE HIGH COURT OF THE REPUBLIC OF SINGAPORE

Suit No. 580 )
of 2007/N )

Between

**TANG KHEOK HWA ROSEMARY**
(NRIC No. S0194889Z), trading as
R M MARTIN SUPPLIES AND SERVICES
(RB No. 35970000D)

... Plaintiffs

And

**JALDHI OVERSEAS PTE LTD**
(RC No. 200414910Z)

... Defendants

## DEFENCE & COUNTERCLAIM

### DEFENCE

1. Paragraphs 1 & 2 of the Statement of Claim are admitted.

2. The Defendants are a part of the Bothra Group of Companies in India and were at all material times engaged in the business of Cargo Handling at Ports, Stevedoring, Warehousing, Logistics, Vessel agency, shipping etc.

3. The "Jaldhi" name has long been associated with the Bothra Group which was established over 30 years ago in India and has over the years built up a strong reputation in the shipping industry. The annual turnover of the Bothra Group in the last five years has been as follows:

**Bothra Group Turnover**

| Year | Turnover Amount |
|---|---|
| 2002-2003 | USD 22,753,962.62 |
| 2003-2004 | USD 23,943,786.46 |

- 2 -

|          |                    |
|----------|--------------------|
| 2004-2005 | USD 104,931,262.05 |
| 2005-2006 | USD 120,291,626.78 |
| 2006-2007 | USD 137,660,401.30 |

4. Since establishing operations in Singapore, the Defendants have enjoyed the goodwill that has been built up in the "Jaldhi" name by the Bothra Group. Ship owners and Charterers place great trust in the "Jaldhi" name because it is part of the Bothra Group. The annual turnover of the Defendants in the last two years since incorporation has been as follows:

**Defendants' Turnover**

| Year | Turnover Amount |
|------|-----------------|
| 2005 | USD 30,000,000.00 |
| 2006 | USD 80,500,000.00 |

5. Moses Tay is the husband of the Plaintiff, Tang Kheok Hwa Rosemary, and was at all material times, employed by the Plaintiffs and/or acted as the agent of the Plaintiffs.

**The Agreement**

6. Paragraph 3 of the Statement of Claim is admitted.

7. Between 2005 and June 2007, the Defendants chartered a total of about 201 vessels which were managed by the Defendants pursuant to the Agreement.

8. The following were material express or implied terms of the Agreement:

   8.1. The Plaintiffs were to manage the vessels fixed in the Defendants' name, subject to the Defendants' instructions.

   8.2. The Plaintiffs were to source for vessels to be fixed in the Defendants' name, provided that the Defendants were agreeable to such fixtures. In this regard, the Plaintiffs were required to obtain express consent from the Defendants before concluding any fixtures and charterparties

in the Defendants' name. At all times, the charterparties were only to be signed by the Defendants and not by the Plaintiffs on behalf of the Defendants.

8.3. In consideration of their management of vessels fixed in the Defendants' name, the Plaintiffs would receive management fees from the Defendants as set out in paragraphs 3(a) and (b) of the Statement of Claim.

8.4. The documentation in relation to fixtures in the Defendants' name and information contained therein were the property of the Defendants and were confidential in nature, which the Plaintiffs were obliged not to disclose to the third parties except with the Defendants' express consent.

8.5. The Plaintiffs were not authorised to sign Letters of Indemnity ("LOI") on behalf of the Defendants.

8.6. The Plaintiffs were required to seek the express authorisation of the Defendants if they intended to disclose any information and/or release documents generated in the course of the Agreement to third parties.

8.7. The Plaintiffs were under a fiduciary duty to the Defendants. In particular the Plaintiffs were

  i.   a duty to act in good faith;
  ii.  a duty not to make for itself any profit without the informed consent of the Defendant;
  iii. a duty not to act for its own benefit except in so far as is authorised by the Defendants

9. The Defendants refer to paragraph 4 of the Statement of Claim. It is admitted that the Agreement was terminated on or about 26th June 2007. However, the termination was initiated by Moses Tay on behalf of the Plaintiffs and

subsequently agreed by the parties.

10. Further whilst it is admitted that the Plaintiffs did act as managers for vessels chartered by the Defendants, the Defendants aver that the Plaintiffs breached the terms of the Agreement which led to its termination. Particulars of the Plaintiffs' breach of the Agreement are pleaded below.

11. Paragraph 5 of the Statement of Claim is admitted.

12. Paragraph 6 of the Statement of Claim is admitted.

13. Paragraph 7 of the Statement of Claim is denied. In particular, the Defendants deny that they are liable for the alleged "outstanding balance" as pleaded in paragraph 7 or at all for the reasons set out in paragraphs 21 to 25 below. Specifically in relation to the Particulars as pleaded in paragraph 7 of the Statement of Claim (which particulars are denied), the Defendants aver:

   i. Invoice No. TC085-07 which appears at item 21 (and which is denied) is repeated at item 22.

   ii. The "Sub-Total" of US$672,653.20 (which is denied) is incorrect. Mathematically, it should read as US$639,840.80. For avoidance of doubt, it is denied that US$639,840.80 or any part thereof is due and payable to the Plaintiffs.

   iii. The total sum due to the Defendants with respect to the vessels Golden Hope and Marjatta P is US$551,736.68 and not US$101,157.80 as alleged by the Plaintiffs.

14. Paragraph 8 of the Statement of Claim is denied.

### Plaintiffs' breaches of the Agreement:

A. **Vessels chartered in the Defendants' name but without the Defendants' prior knowledge or consent**

15. Sometime in May 2007, the relationship between the parties became strained

after the Defendants learnt that the Plaintiffs had, in breach of the Agreement, chartered the vessels Medi Chennai and Koriana using the Defendants name and style (i.e. "Jaidhi") without the Defendants' consent.

16. The Defendants brought the above fact to the Plaintiffs' notice via an email to the Plaintiffs dated 21st May 2007.

17. By their reply email dated 25th May 2007, the Plaintiffs raised various allegations but admitted they had fixed vessels Medi Chennai, and Koriana using the Jaidhi name <u>without</u> the Defendants' prior knowledge or consent.

18. By reason of the above, the Defendants aver that the Plaintiffs were in breach of the Agreement.

19. Further or in the alternative, the Plaintiffs had by their email dated 25th May 2007, admitted to committing the tort of passing off by wrongfully using the Plaintiffs' name to charter the vessels Medi Chennai and Koriana for their own benefit.

20. Notwithstanding the above breach and/or wrongdoing and on the assumption that the vessels referred to in the Plaintiffs' email of 25th May 2007 were the only vessels so fixed by the Plaintiffs, the Defendants continued to retain the Plaintiffs' services in relation to these vessels only so as not to disrupt operations with the various owners of these vessels. The Defendants permitted the Plaintiffs to account for the vessel Medi Chennai in the Defendants' books as managed by the Plaintiffs under the Defendants' name, while all other vessels' accounting records and transactions were accounted in the books of the Defendants.

B. <u>The GOLDEN HOPE and the MARJATTA P</u>

21. Two of the vessels chartered by the Defendants and managed by the Plaintiffs were the Golden Hope and Marjatta P. The Defendants aver that in breach of the Agreement, the Plaintiffs have wrongfully withheld balance freight due and payable to the Defendants with respect to both these vessels. To-date, the Plaintiffs have only furnished partial details concerning the

fixtures for these two vessels and have wrongfully withheld complete details. Nevertheless, from the limited information furnished by the Plaintiffs, the position in relation to the voyages performed by these vessels was as follows:

22. <u>Golden Hope</u>

| i. | Charterparty: | Voyage charterparty dated 7th February 2007 |
|---|---|---|
| ii. | Charterer from the Defendants: | Shandong Metallurgical Resources Co Ltd |
| iii. | Freight Rate | US$22.50pmt |
| iv. | Cargo carried | 37,000 mt |
| | | US$ |
| v. | 100% Freight Due | 832,500.00 |
| | Less: address commission at 2.5%: | 20,812.50 |
| | | 811,687.00 |
| vi. | 95% Freight | 771,103.13 |
| vii. | Payment of received on 5.3.2007 | 771,103.13 |
| viii. | Balance 5% due: | 40,584.38 |
| | Add difference between Lanshan demurrage of US$58,791.67 Pomalaa despatch of US$16,500 | 40,584.38<br>42,291.67 |
| ix. | Total Due to Defendants | 82,876.05 |

23. <u>Mariatta P</u>

| i. | Charterparty: | Voyage charterparty dated 15th February 2007 |
|---|---|---|
| ii. | Charterer from the Defendants: | Shandong Metallurgical Resources Co Ltd |
| iii. | Freight Rate | US$22.80pmt |
| iv. | Cargo carried | 54,497 mt |
| | | US$ |
| v. | 100% Freight Due | 1,242,531.80 |

|  |  | Less: address commission at 2.5%: | 31,063.29 |
|---|---|---|---|
|  |  |  | 1,211,468.31 |
|  | vi. | Payment received on 5.4.2007 | 738,649.35 |
|  | vii. | Balance due: | 472,818.96 |
|  |  | Less difference between Loadport despatch of US$42,395.83<br>Discharge port demurrage of US$38,437.50 | 3,958.33 |
|  |  | Total Due to Defendants: | 468,860.63 |

24. The Defendants aver that in breach of the Agreement, the Plaintiffs have wrongfully retained freight due and payable to the Defendants. In relation to the "Golden Hope", the Plaintiffs have wrongfully retained and/or failed or refused to pay to the Defendants a sum of US$82,876.05 and in relation to the Marjatta P, the Plaintiffs have wrongfully retained and/or failed or refused to pay to the Defendants a sum of US$468,860.63.

25. Alternatively, the Defendants aver that at the Plaintiffs' request, the parties agreed to vary the fixture arrangements in relation to the Golden Hope and Marjatta P such that the Plaintiffs were the Charterers of the Vessel to Shandong Metallurgical Resources Co Ltd and the Plaintiffs were in turn the Charterers of these vessels from the Defendants. In these circumstances, the Plaintiffs are liable to the Defendants as Charterers for freight as pleaded in paragraphs 23 and 24 above.

C. <u>Breaches of Agreement / Passing off in relation to MV Pos Freedom</u>

26. Subsequent to setting up its own operations team, the Defendants soon discovered that in breach of the agreement, the Plaintiffs had previously fixed the vessel Pos Freedom vide a Charterparty dated the 12th of March 2007, in the Defendants' name, without having informed the Defendants' of the fixture and/or obtaining their consent before concluding the fixture.

27. On 20th June 2007, the Defendants wrote to the Plaintiffs, asking them to

provide the Defendant with a list of vessels that had been fixed in the Defendants' name and managed by the Plaintiffs without the Defendants' knowledge.

28. On 20th June 2007, the Plaintiffs replied to state that "other than the Medi Chennai", there were "none others" which had been fixed by the Plaintiffs in the Defendants' name and managed by them without the Defendants' knowledge.

29. On 26th June 2007, the Defendants wrote to the Plaintiffs, putting them on notice that the Plaintiffs had breached the Agreement and that the Plaintiffs had acted wrongfully in chartering the Pos Freedom using the Jaldhi name without the Defendants' prior knowledge or consent. The Defendants also again demanded a list of all vessels concluded by the Plaintiffs using the Defendants' name and expressly reserved their right to obtain an account of monies earned using the Jaldhi name.

30. The Plaintiffs replied on the same day, admitting that they had chartered the Pos Freedom using the "Jaldhi" name and without the Plaintiffs' consent or knowledge but did not disclose any other information.

31. By chartering the Pos Freedom using the "Jaldhi" name for their own benefit and by failing to inform the Defendants of the same, the Plaintiffs had breached the Agreement and further also committed the tort of passing off.

32. Further and/or in the alternative, Plaintiffs have breached their fiduciary obligations to the Defendants as their agents, by acting against the interests of the Defendants by chartering the Pos Freedom using the Defendants' name, for their own benefit and failing to inform the Defendants of the same.

D. **Breaches of Agreement / Passing off in relation to Medi Shanghai**

33. On 24th July 2007, the Defendants received a claim for stevedore damage from the Owners/Master of the vessel Medi Shanghai. By reason of this demand, the Defendants learnt that the Medi Shanghai had also in fact been chartered by the Plaintiffs on 23rd April 2007 in the Defendants' name but

without their prior consent.

34. On 25th July 2007, the Defendants placed the Plaintiffs on notice that the Medi Shanghai had been fixed by the Plaintiffs without the Defendants' consent and the Defendants accordingly reserved their rights in relation to the Plaintiffs' breach including a right to obtain an account of profits.

35. On 28th July 2007, the Defendants wrote to the Plaintiffs to demand a complete account of all fixtures concluded by the Plaintiffs using the Jaldhi name and without the Defendants' consent.

36. By chartering the Medi Shanghai using the "Jaldhi" name for their own benefit and by failing to inform the Defendants of the same, Plaintiffs had breached the Agreement and had also committed the tort of passing off.

37. Further and/or in the alternative, Plaintiffs as agents of the Defendants have breached their fiduciary obligations to the Defendants, by acting against the interests of the Defendants by chartering the Medi Shanghai using the Defendants' name, for their own benefit and failing to inform the Defendants of the same.

E. Breach in relation to Confidential Information

38. The Defendants have also received from third parties copies of fixture notes and Charterparties of vessels chartered in the Defendants' name.

Particulars

i. A Time Charterparty dated 16th January 2007 between the Defendants and Meteora Navigation SA.

ii. A Time Charterparty dated 16th March 2007 between the Defendants and Koriana Transportation Corp of Liberia.

39. As these documents contained sensitive information about the Defendants' pricing for these fixtures including the commission structure, these

documents were clearly confidential in nature. By passing this confidential information on to a third party without first obtaining the Defendants' consent, the Plaintiffs had breached their obligations as to confidentiality under the Agreement.

40. Further and/or in the alternative, the Plaintiffs have breached their fiduciary obligations to the Defendants as their agents, by acting against the interests of the Defendants and forwarding the above listed confidential information to a third party, without the Plaintiffs' prior knowledge and/or consent.

41. As a consequence of the above mentioned breaches, the Defendants have been put to loss.

### Particulars

i. The best particulars that the Defendants can furnish is that as consequence of disclosing the time charterparties to Bagadia Brothers, the sub-freights earned by the Defendants were reduced as follows:

| | |
|---|---|
| Meteora | US$815,625 |
| Koriana | US$773,437.50 |
| | US$1,589,062.50 |

F. **Breach in relation to Fraudulent Letters of Indemnity ("LOI")**

42. The Defendants subsequently discovered that in breach of the Agreement, the Plaintiffs had fraudulently and wrongfully issued Letters of Indemnity ("LOI") to various ship owners for the delivery of cargo without the production of original Bills of lading in the Defendants' name and without the Defendants' knowledge or consent.

43. The Plaintiffs have subsequently admitted vide a letter from their solicitors, Allen & Geldhill LLP to the Defendants' solicitors, that they had issued 4 such LOIs, 3 for in relation to the vessel Pos Freedom and 1 in relation to the Medi Shanghai. The Defendants do not have particulars of these 4 LOIS.

44. However in addition to these 4 LOIs, the Plaintiffs in fact issued 2 LOIs with respect to the vessel Meteora without the Defendants knowledge or consent.

### Particulars

i. LOI dated 21st May 2007 with respect to a shipment of 57,846 wmt of Nickle Ore in bulk shipped on the vessel Meteora at Lanshan or Rizhao Port, China.

ii. LOI dated 18th June 2007 with respect to a shipment of 57,130.12 wmt of Lateritic Nickle Ore in Bulk shipped on the vessel Meteora at Xingang, China.

45. The Defendants have discovered that the above listed LOIs were issued on a letterhead purporting to be that of Jaldhi Overseas Pte Ltd and were signed off as "Martin Tay, Operations Manager, Jaldhi Overseas Pte Ltd". Furthermore, the Plaintiffs created a duplicate company stamp of Jaldhi Overseas Pte Ltd and affixed this stamp on the above-mentioned LOIs.

46. By reason of the aforesaid, the Defendants aver that the Plaintiffs had:

i. breached the Agreement;

ii. wrongfully used the Defendants' name to carry on business for themselves; and

iii. breached their fiduciary obligations to the Defendants as their agents, by acting against the interests of the Plaintiffs

### Documents and Account of Profits

47. On 8th August 2007, the Defendants via, M/s Haridass Ho & Partners, demanded that the Plaintiffs furnish all documents and information pertaining to various vessels chartered by the Plaintiffs in breach of the Agreement, and

further demanded a full and complete account with respect to all fixtures and voyages managed by the Plaintiffs.

48. By an email dated 18th August 2007, the Plaintiffs demanded payment of US$624,334.73 and S$8,000.00 being their alleged ship management fees (which is denied) and rental for use of the Plaintiffs' premises.

49. On 24th August 2007, the Plaintiffs' solicitors responded to furnish some of the information demanded. The Plaintiffs further alleged that two fixtures involving the vessels, Pos Freedom and Medi Shanghai incurred losses. The Defendants dispute that the Pos Freedom and Medi Shanghai incurred losses as alleged by the Plaintiffs or at all and aver that by reference to other fixtures concluded and managed in the normal course of business, these vessels should have earned profits amounting to at least USD 773,549.74. Pending further discovery from the Plaintiffs, the best particulars that the Defendants can furnish are as follows:

### Particulars

i. The average earnings on similar sized vessels was US$2.84 per mt.

ii. The Pos Freedom and Medi Shanghai carried a total of 272,376.67 mt of cargo.

iii. The above cargoes should have earned a net profit of at least US$773,549.74 which is due and payable to the Defendants.

50. The Defendants aver that the Plaintiffs have failed and/or refused to furnish all documents that ought to have been delivered to the Defendants.

51. The Defendants aver that the Plaintiffs have failed to render full and proper accounts with respect to the Pos Freedom and Medi Shanghai and that they are bound to account to the Defendants for these and all other profits earned and retained by the Plaintiffs in breach of the Agreement and/or as a consequence of their wrongful conduct as pleaded above.

52. On 29th August 2007, the Defendants tendered payment of US$72,589.05 and S$8,000.00 being the only sums due and payable to the Plaintiffs. The Defendants asserted a right of set-off with respect to a sum of US$551,736.68, claiming the balance freight due to the Defendants with respect to the vessels Golden Hope and Marjatta P.

53. Notwithstanding the above exercise of a right of set-off, the Plaintiffs had on 24th August commenced proceedings in New York and wrongfully attached and thereafter wrongfully maintained their attachment of the Defendants' funds in the sum of US$799,969.81. Subsequently, the quantum of the Defendants' funds that was attached in the US was reduced to US$682,636.88 made up as follows:

    i.   Principal sum    :    US$450,587.88
    ii.  Interest          :    US$72,049.00
    iii. Legal costs       :    US$160,000.00

The principal sum currently attached includes the US$551,731.68 legitimately set-off by the Defendants.

### Set-Off

54. If which is denied, there is any sum due or owing by the Defendants to the Plaintiffs, the Defendants will seek to set up the aforesaid breaches of contract by way of diminution or extinction of the Plaintiffs' claim.

#### Particulars

    i.   The sum of US$82,876.05 being balance freight due to the Defendants with respect to the Golden Hope as pleaded in paragraph 22 above.

    ii.  The sum of US$468,860.63 being balance freight due to the Defendants with respect to the Marjatta P as pleaded in paragraph 23 above.

    iii. The sum of US$1,589,062.50 being monies due to the

        Defendants with respect to the vessels Meteor and Koriana as pleaded in paragraph 41 above.

    iv.    The sum of US$773,549.74 being monies due to the Defendants with respect to the vessels Pos Freedom and Medi Shanghai as pleaded in paragraph 49 above.

55.    Further or alternatively, the Defendants claims to be entitled to set off against the Plaintiffs' claim so much of the money counterclaimed hereinafter as will wholly extinguish the same.

56.    Save in so far as is expressly admitted, the Defendants deny each and every allegation in the Statement of Claim as if the same were expressly set out and denied seriatim.

## COUNTERCLAIM

57.    The Defendants repeat paragraphs 1 to 55 of the Defence.

58.    By reason of the matters pleaded in paragraphs 21 – 25 the Defendants aver that the sums of US$82,876.05 and US$468,860.63 are due and payable to the Defendants.

59.    By reason of the matters pleaded in paragraphs 2-4, 15-20 and 26 – 37 above, the Defendants aver that the Plaintiffs breached the terms of the Agreement and/or wrongfully passed off the charterparties entered into with respect to the vessels listed below as being vessels chartered by the Defendants:

    1. Medi Chennai
    2. Koriana
    3. Pos Freedom
    4. Medi Shanghai

60.    By reason of the matters pleaded in paragraphs 38 – 41 above, the Defendants aver that the Plaintiffs are liable to the Defendants in the sum of US$1,589,062.50 or alternatively damages to be assessed.

- 15 -

61. By reason of the matters pleaded in paragraphs 42 – 46 above the Plaintiffs are liable to the Defendants in damages to be assessed and/or to indemnify the Defendants against claims that may be incurred on account of and/or arising out of the Plaintiffs' breaches and/or wrong doing as pleaded therein.

62. By reason of the matters pleaded in paragraphs 49-50 above, the Defendants aver that the Plaintiffs are liable to account to the Defendants for all monies received by the Plaintiffs and/or earned with respect to vessels Pos Freedom and Medi Shanghai.

### AND the Defendants counter claim:

(i) US$82,876.05, being the sum due to the Defendants for balance freight payment collected by the Plaintiffs in respect of the vessels Golden Hope and wrongfully retained;

(ii) US$468,860.63, being the sum due to the Defendants for balance freight payment collected by the Plaintiffs in respect of the vessel Marjatta P and wrongfully retained;

(iii) The sum of US$1,589,062.50 or alternatively damages to be assessed pursuant to paragraph 60 above.

(iv) The sum of US$773,549.74 or alternatively damages to be assessed pursuant to paragraph 49 above.

(v) Damages to be assessed pursuant to paragraph 59 above

(vi) An account of what is due to the Defendants from the Plaintiffs in respect of moneys received by the Plaintiffs and/or earned with respect to the vessels Pos Freedom and Medi Shanghai and any other vessels chartered in the Plaintiffs name without the Defendants consent and an order for payment by the Plaintiffs to the Defendants of the sums found due on the taking of such account;

- 16 -

(vii)  An order that the Plaintiffs indemnify the Defendants against any claims made and/or liabilities that may be incurred as a consequence of or arising out of the Plaintiffs' breach of the Agreement and/or wrong doing as pleaded in paragraphs 42-46 above;

(viii)  an order that the Plaintiffs submit to the Defendants all outstanding documents, correspondences and accounting documents relating to vessels chartered in the Defendants' name.

(ix)  interest thereon at 5.33% per annum from the date when payment was due till Judgment pursuant to Section 12 of the Civil Law Act (Cap 43);

(x)  costs; and

(xi)  such further or other relief as this Honourable Court may deem fit.

Dated this 8th day of October 2007

_[signature]_

Solicitors for the Defendants