UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Tang Kheok HWA Rosemary
*doing business as*
R M Martin Supplies and Services,

                Plaintiff,

-against-

Jaldhi Overseas Pte Ltd.,

                Defendant.

---

Jaldhi Overseas Pte Ltd.,

                Counter Claimant

-against-

Tang Kheok HWA Rosemary
*doing business as*
R M Martin Supplies and Services,

                Counter Defendant

---

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/4/08

07 CV 7498 (CM)

## DECISION AND ORDER GRANTING MOTION BY DEFENDANT/COUNTER CLAIMANT FOR COUNTER SECURITY

McMahon J.:

Plaintiff, Tang Kheok HWA Rosemary d/b/a, RM Martin Supplies and Services, (hereinafter "RM Martin"), is a sole proprietorship with a registered place of business at 35 Burghley Drive, Serangoon Garden Estate, Singapore 559013. Writ of Summons filed in the High Court of the Republic of Singapore on November 9, 2007 (hereinafter "Writ of Summons") at page 5.

Defendant, Jaldhi Overseas Pte Ltd. (hereinafter "Jaldhi"), is an entity incorporated in Singapore, with a principal place of business in Singapore located at 101 Cecil Street, #08-06 Tong Eng Building, Singapore 069533. Verified Complaint at ¶ 3. Jaldhi is engaged in the Chartering

business whereby Jaldhi charters in ocean-going vessels, operates the vessels as disponent Owners, and charters space on such vessels under voyage charter arrangements or pursuant to bills of lading to carry cargo from ports worldwide on behalf of its clients, who are the shippers of bulk cargoes, in exchange for payments of freight and/or hire. Verified Answer with Affirmative Defenses and Counterclaim at ¶ 30.

RM Martin alleges it was party to a contract whereby RM Martin would "fix" (i.e. charter) vessels as well as assist in management and/or operation of those vessels fixed for Jaldhi. See, Verified Complaint at ¶¶ 4 and 5. RM Martin alleges that in return for its services, Jaldhi agreed *inter alia* to pay Plaintiff 2.5% of the hire payable for each vessel fixed for Defendant.

On August 24, 2007, RM Martin filed a Verified Complaint against Jaldhi in the Southern District of New York. See, Exhibit 1, Verified Complaint. The complaint alleges that Jaldhi failed to pay RM Martin commissions in relation to several vessels and that on or about June 26, 2007, the agreement was terminated. The complaint alleged damages in the amount of $672,653.30, exclusive of interest, litigation costs, and attorneys' fees. Verified Complaint at ¶¶ 9-14.

Pursuant to Supplemental Rule B, Plaintiff RM Martin sought an Order directing the Clerk of Court to issue a Process of Maritime Attachment and Garnishment, and on August, 27, 2007, the Court issued an *Ex Parte* Order for Process of Maritime Attachment ordering the attachment of funds or property belonging to Defendant Jaldhi up to $884,165.85. See, *Ex-Parte* Order for Process of Maritime Attachment dated August 27, 2007. Plaintiff requested a second Ex-Parte Order for Process of Maritime Attachment in the reduced amount of $799,969.81, which order was signed on September 7, 2007. See, *Ex-Parte* Order for Process of Maritime Attachment dated September 7, 2007.

2

On September 11, 2007, RM Martin initiated legal proceedings against the Defendant Jaldhi in The High Court of The Republic of Singapore (Suit No. 580 or 2007) (hereinafter the "Singapore Action") based on the same cause of action that was asserted as a predicate for obtaining Process of Maritime Attachment in New York. See, Writ of Summons, ¶¶ 1 and 2. Jaldhi has entered an appearance in the Singapore Action. See, Memorandum of Appearance in the Singapore Action dated September 12, 2007. The Singapore Litigation is presently pending.

On September 12, 2007, an Electronic Funds Transfer in the amount of $799,969.81 was attached at J.P. Morgan Chase. See, Letter to Court, dated September 12, 2007. Subsequent to the attachment, RM Martin, again requested a reduced *Ex-Parte* Order for Process of Maritime, which order was signed on September 12, 2007. See, *Ex-Parte* Order for Process of Maritime Attachment signed on September 12, 2007. RM Martin explained in a letter to the Court that after each *Ex-Parte* Order for Process of Maritime Attachment, it had subsequently learned that Jaldhi, had paid respectively, $72,589.05 and $101,157.80, thus reducing its base claim to $450,587.88.

Jaldhi's answer in the New York litigation includes various counterclaims. Although Jaldhi admits that the parties entered into an oral contract whereby RM Martin would provide ship management services, Jaldhi alleges that it was RM Martin that breached the agreement. See, Exhibit 2, Verified Answer with Affirmative Defenses and Counterclaim at ¶ 29-50. Jaldhi claims that: (1) RM Martin failed to remit payments of $551,736.68; (2) RM Martin abused its trust by chartering ships in the name of Jaldhi without Jaldhi's prior consent, resulting in lost profits in the amount of $773,549.74, and; (3) Jaldhi was entitled to recover the return of compensation paid to RM Martin during the term of its breach, *i.e.* $1,610,179.00. See, Verified Answer with Affirmative Defenses and Counterclaim at ¶¶ 42 - 45. Jaldhi also claims interest, attorneys' fees and litigation

3

costs in connection with this matter and the underlying Singapore action. See, Exhibit 2, Verified Answer with Affirmative Defenses and Counterclaim at ¶¶ 49 – 50.

On September 25, 2007, Defendant made the instant application for counter-security.

On December 6, 2007, the Court "so ordered" a stipulation between the parties that (1) permitted plaintiff to amend the complaint, (2) directed the Clerk of the Court to issue a new writ of attachment in the amount of $426,784.69 and (3) directed the garnishee, J.P. Morgan Chase Bank, to release funds previously attached and only restrain $426,784.69. This latest reduction in restrained funds reflects RM Martin's recent application in the High Court of the Republic of Singapore to further reduce its claims against Jaldhi to the $230,006.63, exclusive of interest, fees and costs.

Standard for Granting Counter-Security

For a defendant/counter claimant to obtain counter security, the defendant/counter claimant must satisfy the requirements of Supplemental Rule E(7) which provides in relevant part:

> Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct . . . .

The final clause of the quoted language makes clear that the trial court possesses discretion in deciding whether to order counter-security. See, Afram Lines International, Inc. v. M/V Capetan Yiannis, 905 F.2d 347, 349 (11th Cir. 1990); Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400, 403 (5th Cir. 1987); 7A James W. Moore et al., MOORE'S FEDERAL PRACTICE P E.15, at E-756 (2d ed. 1995). In exercising this discretion the Court should be guided by two principles: (1) placing the

parties on equal footing; and (2) preventing the imposition of such burdensome costs on a plaintiff that it might prevent it from bringing suit. See Result Shipping Co. v. Ferruzzi Trading USA. 56 F.3d 394 (2d Cir. 1995). Rule E(7)(a) should not be permitted to be employed like a bludgeon to eliminate the possibility of security for well-founded claims through the granting of counter-security on a defendant's dubious counterclaims:

> The court should not require counter-security where the counterclaim is frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant.

Titan Nav., Inc. v. Timsco, Inc., 808 F.2d 400, 404 (5th Cir.1987).

The weight of authority suggests that in reviewing counterclaims on a motion for counter-security pursuant to Rule E(7), courts should not conduct extensive merits analysis, but rather, screen only for "totally frivolous claims." Finecom Shipping Ltd. v. Multi Trade Enterp. AG, No. 05 Civ. 6695(GEL), 2005 WL 2838611, at *1 (S.D.N.Y. Oct. 25, 2005) (Lynch, J.); see Starboard Venture Shipping, Inc. v. Casinomar Transp., Inc., No. 93 Civ. 0644(SS), 1993 WL 464686, at *6 (S.D.N.Y. Nov. 9, 1993) (Sotomayor, J.); see also Afram Lines Int'l, Inc. v. M/V Capetan Yiannis, 905 F.2d 347, 350 (11th Cir.1990); Titan Navigation, at 404.

### Jaldhi's Counterclaims

RM Martin's argues that counter-security is not authorized because Jaldhi's counterclaims do not "rise out of the same transaction," as required by Rule (E)7. However, plaintiff asks the Court to take an overly narrow view of the phrase "arising out of the same transaction." It is clear that RM Martin's claims and Jaldhi's counterclaims stem from an oral agreement between RM Martin and Jaldhi, which both parties agree was a valid maritime contract. And since RM Martin has received security for its claims in the form of a Rule B attachment, Jaldhi's is entitled to counter-security for

5

its counter-claims pursuant to Rule (E)7, provided, of course, that Jaldhi's counterclaims are not frivolous on their face.

Plaintiff characterizes defendant's counterclaims as frivolous, general, speculative and lacking in merit. In fact, Jaldhi's counterclaims are essentially the flip side of RM Martin's claims: Jaldhi denies that it was in breach of any agreement with RM Martin and argues that it was RM Martin who breach the agreement for, *inter alia*, wrongfully using Jaldhi's name to charter vessels for its own account, improperly issuing Letters of Indemnity that purported to bind Jaldhi for obligations it did not undertake, failing to account for monies collected during the course of its agreement with Jaldhi and wrongfully disclosing confidential information. See, Exhibit 2, Verified Answer with Affirmative Defenses and Counterclaim at ¶s 36 to 38. The Court cannot say – based on the limited information provided - that Jaldhi's counterclaims are "frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the complainant." See Titan Navigation, 808 F.2d at 404. Indeed, at this juncture, the Court is in no position to find Jaldhi's counter-claims any less valid than RM Martin's claims. Moreover, because the merits are being litigated in another forum, I will have no occasion to make any merits based determination. I therefore have no reason to favor one side over the other in terms of security.

That said, the Court finds the counter-security sought by Jaldhi to be excessive. For instance, Jaldhi's seeks counter security for its claim that Jaldhi is entitled to recover all compensation paid to RM Martin during the "term of its breach"($1,610,179). This claim appears to be overly broad and not grounded in any realistic measure of damages. On the other hand, defendant's counterclaims for RM Martin's failure to remit payments in the amount of $551,736.68 and, to a lesser degree, its

claims for lost profits in the amount of $773,549.74, suggest viable breach of contract theories, albeit with inflated damage demands. Therefore, Jaldhi is entitled to counter-security for its claims. The question is, how much.

It is a well-settled principle that where a court finds counter-security to be appropriate, it should be limited to the amount that claimant has attached. See Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A., 06-Civ.-15299 (PKL), (2007 U.S. Dist. LEXIS 18827, *4-5 (SD.N.Y. 2007); Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 05 Civ. 6695 (GEL), 2005 AMC 2952, 2005 U.S. Dist. LEXIS 25761, at *6, 2005 WL 2838611, at *2 (S.D.N.Y. Oct. 24, 2005). RM Martin has the garnishee-bank holding $426,784.69 of Jaldhi's funds. Equity suggests that RM Martin should be required to provide Jaldhi counter-security in like amount.

Before allowing claims for counter-security, courts must be wary of the burden placed on the plaintiff, and take care to ensure the counter-security claim will not "prevent [Plaintiff] from bringing suit." See, Result Shipping, 56 F.3d at 400. However, financial difficulties do not automatically excuse the countersecurity requirement. See, Titan Navigation, 808 F.2d at 404, *citing* Seaboard & Caribbena Transp. Corp. v. Hafen-Dampschiffart, 329 F.2d 538 (5th Cir. 1964).

In the present matter, RM Martin claims that it is "a small entity without resources sufficient to post counter-security, especially of the magnitude sought by defendant. Plaintiff claims that its bank account only holds SGD 58.130.64 and USD 76,890.75. Rosemary Declaration at ¶ 16. But the Court is confident that requiring RM Martin to post counter-security will not impede plaintiff's capacity to "file suit" since RM Martin has already commenced litigation in the High Court of the Republic of Singapore- the forum where the merits of this contract dispute will ultimately be resolved.

7

Accordingly, RM Martin is directed to post $426,784.69 in counter-security. Should the amount of funds attached by RM Martin be reduced or increased at any time during the course of this litigation, the amount of counter-security shall be adjusted accordingly, so that the amount of counter-security always equals the amount of the attached funds.

This constitutes the decision and order of the Court.

January 4, 2008

                                               U.S.D.J.

BY FAX TO:

Attorneys for Plaintiff
LENNON, MURPHY & LENNON, LLC
Patrick F. Lennon
Nancy R. Peterson
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170
Fax: (212) 490-6070

Attorneys for Defendant
JALDHI OVERSEAS PTE. LTD.
CHALOS, O'CONNOR & DUFFY, LLP
Owen F. Duffy
George E. Murray
366 Main Street
Port Washington, New York 110050
Fax: (516) 767-3605

8